# In the United States District Court for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2019 APR 16 PM 3:57
CLERK_____
SO. DIST. OF GA.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$59,260.00 U.S. CURRENCY,

    Defendant.

No. 2:18-cv-95

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. Dkt. No. 16. For the reasons set forth below, the United States' Motion is **GRANTED**.

## BACKGROUND

This case involves a forfeiture action filed by the United States on $59,260.00 in United States Currency (hereinafter, the "Defendant Currency"). The Defendant Currency was seized from Anthony Frances Gambino following a traffic stop along the southbound side of Interstate 95 in Waverly, Georgia, on the morning of January 22, 2018. Dkt. No. 1 ¶ 6. The facts surrounding the traffic stop and seizure of the Defendant Currency are taken from the United States' Verified Complaint, dkt. no. 1.

On the morning of January 22, 2018, Camden County Sheriff's Deputy Jim Kelly ("Deputy Kelly") pulled over Gambino on the southbound side of Interstate 95 in Waverly, Georgia, for speeding. Dkt. No. 1 at ¶¶ 6-7. Deputy Kelly approached Gambino's vehicle and asked for his driver's license and proof of insurance. Id. ¶ 8. Deputy Kelly immediately noticed that Gambino appeared nervous, fidgety, apologetic, and talkative. Id. Gambino advised Deputy Kelly that he had just recently gotten out of the military and was moving to Florida, but when Deputy Kelly asked for his military ID, Gambino said it was not accessible as it was packed away in the vehicle. Id. Subsequent investigation revealed that in 2006, twelve years prior to this incident, Gambino was arrested by the U.S. Army in Quantico, Virginia, for wrongful use of cocaine and hallucinogens, wrongful distribution of hallucinogens, and wrongful appropriation of government property, and he was punished via special court martial, which resulted in a sentence of eight months incarceration, a bad conduct discharge, and a rank reduction. Id. ¶ 9.

Gambino produced a New York State driver's license, and Deputy Kelly determined that the license was suspended. Id. ¶ 10. As a result, Deputy Kelly informed Gambino that he would have to be taken to the county jail. Id. When Gambino exited his vehicle, he was in possession of a duffle bag which he said contained $55,000 in cash to be used to close on a home in Florida. Id.

The bag was later determined to contain $59,260.00. Id. Deputy Kelly frisked Gambino and removed credit cards and a large fold of money bound by a rubber band. Id. While Gambino was placed in the back seat of Deputy Kelly's patrol vehicle, Deputy Kelly called for additional law enforcement to assist in the traffic stop. Id.

Deputy M. Blaquiere arrived at the scene and, after being briefed by Deputy Kelly, went to speak with Gambino. Id. ¶ 11. Deputy Blaquiere asked Gambino about his military service and Gambino indicated that he had been in the army but had been out for six years. Id.

Next, Lieutenant Cedric Brown arrived at the scene with a Narcotics Detection K-9, which was deployed to inspect Gambino's vehicle. Id. ¶ 13. The K-9 positively indicated the presence of contraband in the driver's side door. Id. A search of the vehicle revealed a marijuana grinder. Id.

Deputy Kelly transported Gambino to the Camden County Sherriff Office Patrol building. Id. ¶ 15. While at the Sherriff's Office, Detective Kevin Barber placed five identical duffle bags on the floor with one containing the $59,260—the Defendant Currency. Id. ¶ 16. Lieutenant Brown again deployed the K-9 to inspect the bags, and the K-9 positively indicated the presence of contraband within the bag containing the Defendant Currency. Id.

At that point, Detective Barber advised Gambino of his Miranda Rights. Id. ¶ 17. After acknowledging his rights, Gambino stated that between $18,000 and $20,000 belonged to him, that he obtained $15,000 from jewelry he pawned at Pawn Brokers of Staten Island, and $40,000 was given to him by Richie Faver, who he at different times referred to as his friend or as his cousin. Id. Gambino further explained that he was transporting the Defendant currency to Florida to purchase a house in Gulf View Estates on Birdie Lane, Pompano Beach, Florida. Id. ¶ 18. Police at some point after this interview discovered through the El Paso Intelligence Center that Gambino had an open investigation with the Drug Enforcement Administration for suspected involvement in illegal drug distribution, armed robbery, and burglary. Id. ¶ 19.

Mr. Gambino was released from the Camden County Jail after a short period of time with a citation for driving on a suspended license and for speeding. Id. ¶ 21. Based on the facts described above, DEA agents administratively seized the Defendant Currency for forfeiture. Id. ¶ 23. Notice of seizure was sent to Gambino and Richie Faver. Id. Additionally, notice was electronically published for thirty consecutives days on www.forfeiture.gov beginning on February 26, 2018. The United States filed a Verified Complaint for Forfeiture In Rem against the Defendant Currency on August 2, 2018. Id. at 7.

AO 72A
(Rev. 8/82)

On September 11, 2018, Richie Faver filed a claim to the Defendant Currency. Dkt. No. 5. But, on December 19, 2018, the Court granted the United States' Motion to Strike Faver's claim because the Court found that Faver lacked standing to assert a claim to the Defendant Currency. Dkt. No. 13. At no time did Gambino or any other person file a claim to Defendant Currency. On February 13, 2019, the United States filed this motion for summary judgment, dkt. no. 16, currently at issue before the Court arguing that there are no genuine issues of material fact and asserting that it is entitled to the Defendant Currency pursuant to 21 U.S.C. § 881(a)(6).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper

but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Procedural Requirements

The Court notes at the outset that other courts in this district have considered similar unopposed forfeiture actions like this in the context of default judgment, and in doing so, those courts first determined whether the United States had met the requirements of Rule G of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions. See United States v. $14,660 in U.S. Currency, No. CV 112-002, 2013 WL 394155, at *1 (S.D. Ga. Jan. 30, 2013); United States v. $15,252.00 in U.S. Currency, No. CV 112-072, 2013 WL 1390385, at *2 (S.D. Ga. Apr. 4, 2013); United States v. $8,896.00 in U.S. Currency, No. CV 113-211, 2015 WL 3819241, at *1 (S.D. Ga. June 18, 2015). Rule G "governs a forfeiture action in rem arising from a federal statute." Fed. R. Civ. P. Supp. R. G (1). Under Rule G, the United States' complaint must:

> (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and--if different--its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

7

Fed. R. Civ. P. Supp. R. G (2)(a)-(f). The United States' Complaint in this case satisfies each of these requirements because (a) it is verified, dkt. no. 1 at 8; (b) it states the grounds for subject-matter jurisdiction under 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a), in rem jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b), and venue under 28 U.S.C. § 1395, dkt. no 1 ¶¶ 4-5; (c) it describes the Defendant Currency with reasonable particularity, id. ¶¶ 2, 10, 22, 23; (d) it states that the Defendant Currency was seized during a traffic stop in Camden County along Interstate 95 on January 22, 2018, id. ¶ 3; (e) it identifies 21 U.S.C. § 881(a)(6) (2018) as the statute under which the action is brought, dkt. no. 1 ¶ 2; and (f) it states sufficient facts to support a reasonable belief that the government would be able to show by a preponderance of the evidence that there is a substantial connection between the Defendant Currency and an illegal drug transaction, id. ¶¶ 6-23; see 21 U.S.C. § 881(a)(6).

Rule G also contains notice requirements. The United States must publish notice and provide direct notice to any person who reasonably appears to be a potential claimant. See Fed. R. Civ. P. Supp. R. G (4). The United States also meets these requirements because it sent notice directly to Gambino and Faver, and it electronically published notice for thirty days. Dkt. No. 1 ¶ 23.

AO 72A
(Rev. 8/82)

While Rule G(5) provides the procedure for a person to assert an interest in the defendant property, only Richie Faver filed a claim on Defendant Currency in this case, and the Court determined that he lacked standing to bring a claim. Dkt. No. 13. As such, no other party currently has a claim to Defendant Currency, and the Court finds that the United States has satisfied all of the procedural requirements of Rule G.

## II.   Merits of United States' Case

Although the United States has satisfied its procedural requirements under Rule G and the action is unopposed, that does not end the Court's inquiry; instead, the United States must demonstrate by a preponderance of the evidence that the Defendant Currency is subject to forfeiture—i.e. that it had a substantial connection to an illegal drug transaction. See 18 U.S.C. § 983(c)(1),(2); 21 U.S.C. § 881(a)(6).

The Controlled Substances Act allows forfeiture to the United States of

> (6) All moneys, negotiable instruments, securities, or other things of value <u>furnished or intended to be furnished</u> by any person <u>in exchange for a controlled substance</u> or listed chemical in violation of this subchapter, all proceeds <u>traceable to such an exchange</u>, and all moneys, negotiable instruments, and securities <u>used or intended to be used to facilitate</u> any violation of this subchapter.

21 U.S.C. § 881(a)(6) (2018) (emphasis added); <u>United States v. $183,791.00 in U.S. currency</u>, 391 F. App'x 791, 794 (11th Cir.

9

2010). Pursuant to the Civil Asset Forfeiture Reform Act of 2000, the United States must establish that the Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) by a preponderance of the evidence. $183,791.00 in U.S. currency, 391 F. App'x at 794 (citing 18 U.S.C. § 983(c)(1)). The Court looks to the "totality of the circumstances" when determining whether the United States has met this burden. Id. (quoting United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993)). The United States may use circumstantial evidence to meet its burden, but it is not required to produce evidence connecting the Defendant Currency to a particular narcotics transaction. Id. (citing United States v. $291,828.00 in U.S. Currency, 536 F.3d 1234, 1237 (11th Cir. 2008); United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc)). Rather, "[i]t need only show that the money was 'related to some illegal drug transaction.'" Id. (quoting $242,484.00, 389 F.3d at 1160). The Court should evaluate this evidence with "a common sense view to the realities of normal life." $291,828.00 In U.S. Currency, 536 F.3d at 1237.

Applying these rules to the facts of this case, the Court finds, under the totality of the circumstances, that the United States has shown by a preponderance of the evidence that the Defendant Currency was "related to some illegal drug transaction." $242,484.00, 389 F.3d at 1160. The Court notes that this case is

a closer call than those relied on by the United States, see United States v. $37,768.00 in U.S. Currency, No. 206CV386FTM34SPC, 2007 WL 3197740, at *1 (M.D. Fla. Oct. 26, 2007) (granting summary judgment in favor of the United States in a forfeiture action where the case involved a large amount of cash, odor of marijuana in the vehicle, a positive alert from a K-9 to the bag containing the currency, and cocaine and marijuana in the bag along with the cash); United States v. $26,620.00 in U.S. Currency, No. CIV,A, 2:05CV50WCO, 2006 WL 949938, at *1 (N.D. Ga. Apr. 12, 2006) (granting summary judgment in favor of the United States in a forfeiture action where the case involved a large amount of cash wrapped in bundles with rubber bands inside a pillow case and shopping bag, marijuana residue in the vehicle, a positive alert from a K-9 to the bag containing the currency, inconsistent statements from occupants of the car, and an undercover drug deal set up by officers using the phone of one of the occupants of the car), but nonetheless, the evidence in this case is sufficient to satisfy the United States' burden.

First, although the $59,260.000 in cash inside a duffle bag is not sufficient to show relation to a drug transaction on its own, the Eleventh Circuit has stated that such large amounts of cash are "highly probative of a connection to some illegal activity." $121,100.00 in U.S. Currency, 999 F.2d at 1507; see also $37,768.00 in U.S. Currency, 2007 WL 3197740, at *7 (granting

11

forfeiture where police found an individual carrying $37,768.00); $26,620.00 in U.S. Currency, 2006 WL 949938, at *7 (stating that "[f]or purposes of a civil forfeiture action, the possession of a large sum of cash is strong evidence of narcotics trafficking" in a case where police found an individual "carrying $26,620 and $868 in United States currency"); $183,791.00 in U.S. currency, 391 F. App'x 791, 795 (11th Cir. 2010) ("[L]egitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack . . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities." (quoting $242,484.00, 389 F.3d at 1161)).

Second, drug paraphernalia—a marijuana grinder—was found in the car along with the duffle bag containing the Defendant Currency. See $26,620.00 in U.S. Currency, 2006 WL 949938, at *8 ("For purposes of a civil forfeiture action, a large amount of money found in close proximity to drugs or drug paraphernalia is evidence of drug trafficking."); $121,100.00 in U.S. Currency, 999 F.2d at 1507 (discussing drug paraphernalia as a factor in showing relation to drug transactions for forfeiture purposes). Now, granted, a marijuana grinder is less probative of drug transactions than other types of paraphernalia—small bags, scales, etc.—but the grinder is still a factor relevant to the inquiry here.

Third, a drug detection K-9 alerted to the presence of contraband at the driver's side door of Gambino's vehicle and a bag containing the Defendant Currency. Courts in the circuit have routinely held that such an alert from a drug detection K-9 is a relevant factor weighing in favor of the government in forfeiture actions. See $26,620.00 in U.S. Currency, 2006 WL 949938, at *8 ("[T]he positive alert of a certified drug detection dog may be considered by the court in weighing the totality of the evidence in a civil forfeiture action."); $183,791.00 in U.S. currency, 391 F. App'x at 795 ("We have held that a narcotics dog's alert is a factor weighing in the government's favor." (citing $242,484.00, 389 F.3d at 1165-66)); $37,768.00 in U.S. Currency, 2007 WL 3197740, at *6 ("K-9 'JACK' gave a positive alert to both Claimant Zavala's vehicle and the black bag."); $8,896.00 in U.S. Currency, 2015 WL 3819241, at *1 (granting forfeiture to government where, among other things, "a K-9 performed a 'four bag sniff test' on the currency and gave a positive alert each time.").

Fourth, police discovered that Gambino had been arrested and sentenced via military court martial for wrongful use of cocaine and hallucinogens and wrongful distribution of hallucinogens. Moreover, police discovered that the DEA had an open investigation of Gambino for suspected involvement in, among other things, illegal drug distribution. The Eleventh Circuit has considered prior drug-related arrests and convictions as not only a relevant,

but critical, factor in forfeiture actions. See $121,100.000 in U.S. Currency, 999 F.2d at 1507-08 ("Finally, and critically, Foster had a history of narcotics arrests and convictions."). While the open investigation with the DEA on its own is not probative of much, since based on these facts Gambino had not been arrested or charged in that investigation, it is still relevant under the totality of the circumstances, especially when combined with the fact that Gambino has previously been arrested and convicted in a military court for a drug distribution offense.

Fifth, when Deputy Kelly first pulled Gambino over, he noticed that Gambino appeared nervous, fidgety, apologetic, and talkative. See id. at 1507 (finding claimant's nervousness to be a probative factor in the forfeiture analysis). It is possible that Kelly was nervous because he was driving on a suspended license, but that possibility does not mean that his demeanor cannot be a factor weighing in favor of the Defendant Currency being related to a drug transaction. See $121,100.00 in U.S. Currency, 999 F.2d 1503, 1508 (stating that just because "the evidence presented would support an alternative hypothesis," like "some other illicit activity," does not prevent it from being probative of whether the money at issue was related to drugs).

Finally, Gambino also made inconsistent statements about his time in the military that contradicted the true timing and nature of his discharge. See $26,620.00 in U.S. Currency, 2006 F. Supp.

14

2d at *8 (finding inconsistent statements to officers to be probative of the fact that money was related to drug trafficking). Gambino initially stated to Deputy Kelly that he had just recently gotten out of the military, and he told Deputy Blaquiere that he had been out of the Army for six years. A subsequent investigation contradicted both of these statements because Gambino was given a bad conduct discharge in a military court martial twelve years prior to the events of this case. These inconsistent statements show that Gambino was being untruthful with officers at the traffic stop, and those untruthful statements had to do with the timing of his discharge from the military, which was in part due to illegal drug distribution charges. This factor weighs in the United States' favor. See id.

Based on the totality of the circumstances including all of the facts discussed above, the Court finds that the United States has shown by a preponderance of the evidence that the Defendant Currency was related to some illegal drug transaction. The amount of the cash seized, the marijuana grinder, the K-9 alert of the car and the cash, Gambino's prior drug distribution arrest and conviction in the military court martial, his nervous demeanor, and his inconsistent statements are enough in this case to show by a preponderance of the evidence that the Defendant Currency was related to some illegal drug transaction. See $14,660 in U.S. Currency, 2013 WL 394155, at *1 n.2 (finding facts sufficient to

15

establish forfeiture where during a traffic stop police found pieces of marijuana in a brief case and found a separate bag containing $14,660 in cash to which a K-9 alerted to the presence of drugs); $8,896.00 in U.S. Currency, 2015 WL 3819241, at *1 n.3 (finding facts sufficient to establish forfeiture where during a traffic stop police smelled marijuana, found a bag of marijuana on one of three vehicle occupants, found several broken rubber bands and marijuana residue in the back seat, and conducted a "four-bag sniff test" on the currency with a K-9 that resulted in a positive alert each time). Thus, the United States is entitled to summary judgment and forfeiture of the Defendant Currency.

## CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment, dkt. no. 16, is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 16th day of April, 2019.

```
                              HON. LISA GODBEY WOOD, JUDGE
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF GEORGIA
```